## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Cody Allen Carr (DCP # 082738)  :

v.    :    Civil No._____

Sean Borden, et al.    :

FILED    :    ⌐✗⌐} Demand for Jury Trial
HARRISBURG, PA    :    {⌐ ⌐} No Jury Trial Demand

JUL 0 2 2024

PER _____
DEPUTY CLERK

## I.    NATURE OF COMPLAINT

1.  This is a civil action authorized by **42 U.S.C. § 1983** to redress the deprivation under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under **28 U.S.C. §§ 2283** and **2284** and **Rule 65 of the Federal Rules of Civil Procedure.**

2.  The Middle District of Pennsylvania is an appropriate venue under **28 U.S.C. § 1391 (b) (2)** because it is where the events giving rise to this claim occurred.

## II.    PLAINTIFF

3.  Plaintiff, Cody Allen Carr, whom is also recognized by his maiden name, Cody Allen Carbaugh at Dauphin County Prison, is and was at all times mentioned herein a pretrial detainee confined at Dauphin County Prison, in Harrisburg, Pennsylvania, Dauphin County.

## III.    DEFENDANTS

4.  Each of the following defendants are being sued individually and in each of their official capacities. At all times mentioned in this complaint, each defendant acted under the color of state law.

5.  Defendant, Sean Borden, is a Unit Manager for Dauphin County Prison. Mr. Borden's work address is:

    Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

6.  Defendant, Jillian Cuffaro, is a Director of Treatment and Unit Management for Dauphin County Prison. Ms. Cuffaro's work address is:

    Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

7.  Defendant, Ann Yingst, is a Law Librarian for Dauphin County Prison. Yingst's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

8.  Defendant, LaTonya Ray, is a Deputy Warden of Treatment for Dauphin County Prison. Ms. Ray's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

9.  Defendant, Gregory Briggs, is a Warden for Dauphin County Prison. Mr. Briggs's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

10. Defendant, Lionel Pierre, is a Deputy Warden of Security for Dauphin County Prison. Mr. Pierre's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

11. Defendant, Bruce LaValley, is a Deputy Warden of Operations for Dauphin County Prison. Mr. LaValley's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

12. Defendant, Kasey Fitz, is a "classification" employee for Dauphin County Prison. Mr. Fitz's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

13. Defendant, Roger Lucas, is a Custody Major for Dauphin County Prison. Mr. Lucas's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

14. Defendant, Janine Rawls, is a Community Connections Coordinator and Law Library Supervisor for Dauphin County Prison. Ms. Rawls's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

15. Defendant, DiAndra Pena, is a Litigation and Policy Coordinator for Dauphin County Prison. Ms. Pena's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

16. Defendant, Emeila Rodriguez, is an Executive Administrative Assistant for Dauphin County Prison. Ms. Rodriquez's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

17. Defendant, Christian Dreibelbis, is a Treatment Specialist for Dauphin County Prison. Dreibelbis's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

18. Defendant, Olivia, is a Treatment Specialist for Dauphin County Prison. Ms. Olivia's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

19. Defendant, Robert Battaglia, is a Corrections Officer for Dauphin County Prison. Mr. Battaglia's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

20. Defendant, Randall Hinkle, is a Corrections Officer for Dauphin County Prison. Mr. Hinkle's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

21. Defendant, William Welden, is a Unit Manager for Dauphin County Prison. Mr. Weldon's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

22. Defendant, Raelynn Parson, is a Lieutenant for Dauphin County Prison. Ms. Parson's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

23. Defendant, Mark Skelton, is a Lieutenant for Dauphin County Prison. Mr. Skelton's work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

24. Defendant(s), Dauphin County Prison Board of Inspectors are board members of the Prison Board of Inspectors for Dauphin County Prison. Their work address is:

Dauphin County Prison, 501 Mall Road, Harrisburg, PA 17111

## IV.    FACTS

25. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED), NEGLIGENCE, RECKLESSNESS, DELIBERATE INDIFFERENCE, RETALIATION, CRUEL AND UNUSAL PUNISHMENT, FAILURE TO PROTECT, FAILURE TO ACT/INTERVEN, FAILURE TO TRAIN:**

26. On December 21, 2014, (during my first incarceration at DCP), I submitted a PREA complaint against my ex-boyfriend and Correctional Officer, Robert Battaglia, hereinafter referred to as "BATTAGLIA", alleging sexual assault by CO Battaglia in July/August 2014.

27. On February 20, 2015, I submitted a grievance on Battaglia for violating the separation order between us as well as on former Correctional Officer, Joshua Marshall for threatening me for filing a PREA complaint on Battaglia in December 2014.

28. On or around November 20, 2015, the Honorable Judge Deborah Curcillo granted a temporary PFA against Battaglia after I reported to Victim-Witness program that CO Battaglia came to my residence, physically assaulted me and demanded that I not sue him or the prison and threatened my physical safety if I did not comply. (At the time I was preparing my complaint for my 42 U.S.C. § 1983 against CO Battaglia and DCP).

29. Due to Judge Curcillo wanting me to speak with the Criminal Investigation Division (CID) since Battaglia was a correctional officer with Dauphin County Prison, and the fact that I didn't wish to speak with CID again after I spoke with them in December 2014 about the PREA complaint I put in on Battaglia because I felt like they were interrogating me like I was the perpetrator and not the victim, I chose not to show up to the next court hearing which was scheduled to make the temporary PFA permanent.

30. On June 4, 2022, I submitted a Dauphin County Prison Inmate Request Form, hereinafter referred to as an "IRF", to former Treatment Specialist, Jake Kothe, hereinafter referred to as "KOTHE", saying, "due to being a victim of his physical and sexual assaultive behavior, previously having a PFA against him as well as to prevent any further abuse or retaliation from him, I am requesting a separation order against my ex-boyfriend, C.O. Robert Battaglia."

31. Kothe, responded to my request stating, "original PREA investigation showed no PFA's filed between you and CO Battaglia. Separation will not be filed."

32. On June 7, 2022, I submitted a follow-up request to Kothe, stating, "The reason why you were unable to find any PFA's between C.O. Battaglia & myself is b/c you looked using my incorrect name. My legal name is Cody Carr. Judge Curcillo ordered PFA in 2015."

33. Kothe responded to my request stating, "upon searching the portal, no record exists of a PFA being issued by Judge Curcillo ever for your current name or provided name. Stop filing false PREA allegations or you will be given a misconduct."

34. Between the months of March, 2023 and April, 2023, Correctional Officer, Kevin Edwin, hereinafter referred to as "EDWIN", was privately and confidentially alerted by this petitioner of a dangerous situation regarding this petitioner being bullied, threatened, and extorted and forced to pay for my physical safety.

35. After informing Edwin about the situation without providing the name of the inmate and informing Edwin that I did not want to leave the block, Edwin informed me that If I did not want to leave the block and would not provide him with the name of the inmate that was bullying, threatening and extorting me then there wasn't anything that he could do at that time. I informed Edwin, that I understood and that at the moment I was only informing him in the event that the situation worsened and I would need help.

36. Between the months of May, 2023 and June, 2023, Edwin observed a very heated argument between myself and inmate D.S. He asked me if everything was ok and I said yes. Once inmate D. S. was out of sight, I very discreetly informed Edwin that I needed to speak with him privately as soon as possible. Edwin called me down to medical so that we could speak privately.

37. While out in the hallway outside of "Spring Creek Medical", I informed Edwin that the situation that I spoke to him about previously has gotten severely out of hand and that I needed help because I could not handle the situation anymore. I also informed Edwin that I still did not want to leave the block unless I absolutely had to.

38. While we were discussing the situation at hand, Unit Manager, Shawn/Sean Borden, hereinafter referred to as "BORDEN", came out of his office and down the hall. Edwin asked Borden to sit down with him and I to discuss a situation that needed to be addressed. Borden agreed. After Borden sat down, Edwin asked me to tell Borden exactly what I just told him in which I did.

39. I informed Borden of the dangerous situation that had overtime gotten severely out of hand and that I feared for my life, that I did not want to leave the block unless I absolutely had to but that I needed help with the situation and that help could no longer wait. Borden informed me and Edwin that since this wasn't the first report he has received that inmate D. S. was in fact bullying, threatening and extorting inmates on the block besides myself, that he was going to inform Kasey Fitz (classification), hereinafter referred to as "FITZ", of the situation and inform him that inmate D.S. needed to be on the move list today.

40. Inmate D.S. was never moved.

41. On September 15, 2023, I wrote an anonymous letter to Cuffaro. In said letter, I informed her of the dangerous situation in regards to inmate D.S., that Borden was supposed to move inmate D.S. however he failed to do so, that there was currently a "race war" happening on the block between the African Americans and the Hispanics, that there was numerous "shanks" on the block, that Correctional Officer, Roxanne Morton, hereinafter referred to as "MORTON" and Correctional Officer, Colon, hereinafter referred to as "COLON", continue to instigate and incite this "race war", that there was "inappropriate touching" between Colon and inmate D.S. and that I needed her to do something about this situation before something really bad happened.

42. I placed said letter inside an envelope and sealed it and wrote "Director of Treatment, Ms. Jill" (Cuffaro) on the outside of the envelope and placed the envelope inside the locked request box on the unit.

43. The morning of September 16, 2023, an unknown inmate informed inmate D.S. that they observed me putting an envelope inside the box with Ms. Jill's (Cuffaro) name on it. Inmate D.S. woke me up and confronted me. I denied that I wrote any such letter to Ms. Jill (Cuffaro). Throughout the day, inmate D.S. continued to get even more nervous about

the "contents" of said letter to the point that, inmate D.S. "popped' the locked request box
and retrieved said letter. After reading said letter, inmate D.S. confronted me once again,
and I denied any involvement. Inmate D.S. started confronting multiple inmates whom he
thought would write such a letter to no avail.

44.   After everyone that inmate D.S. confronted denied having any involvement with said
letter, inmate D.S. started comparing hand writing to said letter. D.S. finally came to the
conclusion that it was me that wrote the letter and confronted me about it again. While
confronting me about said letter, inmate D.S. punched me on the right side of my head
above my ear and then punched me on the left side of face underneath my eye bruising
the area around my eye and knocking out one tooth. (The next morning half of another
tooth fell out).

45.   Later that night, inmate D.S. had an unknown Hispanic translator inform me that I needed
to "check out" (this means I tell a correctional officer that I do not feel safe and want to
leave the block) and that if they asked me what happened to my eye then I needed to tell
them that another inmate hit me and that inmate D.S. has "connects" on all the "PC"
blocks and if I tell any correctional officer or any other inmate what inmate D.S. did to
me then he would find out and it would not be pretty for me.

46.   Due to this physical attack while I was in protective custody, I sustained a concussion. To
date I am still experiencing head pain, dizziness, blurred vision and nausea.

47.   On May 9, 2024, due to the concussion and the recurring symptoms and the time frame
from the assault, I had an MRI.

48.   On May 31, 2024, I met with Dr. Demetriou in regards to the results from the MRI. He
stated that I still had a concussion and a mild form of a traumatic brain injury (TBI). Dr.
Demetriou sent a referral to Neurology.

49.   In addition to the physical symptoms, this assault has worsened my Post-Traumatic Stress
Disorder (PTSD) in which has severely heightened my anxiety and nervousness levels
especially around individuals whom make sudden movements around me or become
angry or agitated or I find them to be intimidating.

50.   Since I feared for my life, I followed the instructions given to me and checked off the
block and didn't inform anyone of what happened on the block until I vaguely informed,
Ray and Unit Manager William Welden, hereinafter referred to as "WELDEN" on
December 8, 2023, and then fully informed Cuffaro and Internal Affairs, Joseph Sauble,
hereinafter referred to as "SAUBLE" on February, 23, 2024.

51.   DCP Officials, however more specifically, Borden, had a duty to take reasonable
measures to remedy the circumstances that directly led to and resulted in the physical
assault on this prisoner on 9/16/2023 in which I sustained a concussion and a mild form
of a traumatic brain injury (TBI).

52. Once Borden learned that my physical safety was in jeopardy, he had the duty, acting under color of state law, to immediately take action to ensure my physical safety and he either chose not to, "forgot" to or alerted other prison officials and they chose to not act.

53. In the even that Borden chose not to do anything to remedy the situation or simply "forgot" to remedy the situation, does NOT take away or remove the duty to ensure my physical safety.

54. In the event that he "alerted other prison officials" and they chose not to act to remedy the situation, then the duty falls on those individuals for those individuals would still had the same duty, acting under color of state law that Borden had to ensure my physical safety.

55. Regardless of the reason why "nothing" was done to ensure my physical safety does NOT take away or remove the duty of DCP officials to ensure my physical safety.

56. DCP officials were informed of the "situation" and knew or should have known my physical safety was in danger and did not remedy the situation in anyway. They failed to protect. They were negligent.

57. Any government official acting unconstitutionally is NOT acting as an agent of the government.

58. Every person who, under color of any statue, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

59. This prisoner put his complete trust in Borden to remedy the unsafe and dangerous situation just for his safety and physical and mental wellbeing to be completely disregarded and ignored. Borden allowed this unsafe and dangerous situation to fester into a more unsafe and violent situation which turned physically violent resulting in physical injuries that could have and should been prevented.

60. Borden had a duty acting under color of state law to remedy the unsafe and dangerous situation without allowing it to escalate into physical violence.

61. This prisoner's trust was broken and his rights were violated when prison officials allowed this prisoner to be bullied, extorted, forced into servitude and physically assaulted thus further damaging this prisoner psychologically by worsening this prisoner's PTSD, anxiety and depression.

62. This is NOT rehabilitation which is one objective of any penological institution.

63. On October 11, 2023, I requested a copy of the PREA investigation report between myself and Battaglia.

64. On October 30, 2023, this request was granted by Litigation and Policy Coordinator, DiAndra Pena, hereinafter referred to as "PENA" and she informed me that once I paid the 75 cents for the 3-page document that it would be released to me.

65. On October 31, 2023, I informed Pena that I was indigent and could not pay for the document in which Pena informed me that there was not separate process for indigent inmates that I was still required to pay for the document.

66. On November 10, 2023, I was sexually harassed by Correctional Officer, R. Hinkle, hereinafter referred to as "HINKLE". During this unwanted and unprovoked sexual harassment, Hinkle made sexually suggested comments to me and alluded to some sexual history between Battaglia and myself. I filed a PREA and grievance on this matter immediately after this took place.

67. On November 27, 2023, I submitted a grievance (grievance #954) in regards to DCP refusing to provide the PREA report between myself and Battaglia until payment was received despite my indigent status. I mentioned in this grievance that I needed this report for my § 1983 lawsuit and that I asked DCP to stop impeding my right to file my § 1983 lawsuit in an effective manner and that I was "so over" being discriminated and retaliated against in regards to Battaglia and that I would appreciate it if DCP would stop giving me the "run around" and to stop violating my rights."

68. On December 11, 2023, Hinkle violated national PREA standards and what should have been a separation order due to the ongoing active PREA investigation between Hinkle and myself.

69. Lt. Parson was immediately notified via IRF that Hinkle violated national PREA standards and the separation order. Parson chose to ignore IRF and not respond.

70. On December 15, 2023, DCP officials conducted a "shakedown" on Q6. After we were strip searched we were directed out to the hallway to get "wanded" with a hand-held metal detector. Hinkle violated national PREA standards and what should have been a separation order due to the ongoing active PREA investigation between Hinkle and myself when I was forced to be "wanded" down by Hinkle while there was supposed to be a separation order between us while there was an active PREA investigation being conducted.

71. Lt. Parson was immediately notified via IRF that Hinkle violated national PREA standards and the separation order. Parson chose to ignore the IRF and not respond.

72. On December 22, 2023 grievance #954 was marked "Non-grievable", signed by Deputy Warden of Treatment, LaTonya Ray, hereinafter referred to as "RAY", with a response stating "Incomplete-No receiving staff/staff response, etc."

73. If there was no "receiving staff/staff response", but this said grievance came into the possession of Ray, then ultimately, Ray would have then become the "receiving staff". Ray then chose not to respond as "receiving staff" which then prevented my access to the

grievance system thus in turn made the grievance procedure "unavailable" to this prisoner, at no fault of my own.

74. In December 2023, I submitted 2 separate "IRF's" to Dreibelbis requesting to speak with Internal Affairs.

75. On January 11, 2024, I submitted an IRF to Director of Treatment, Jill Cuffaro stating, hereinafter referred to as "CUFFARO", "Ms. Jill could you please scheduler maybe 20-30 mins of your time to sit down with me in Q-Block multi-purpose room to discuss my numerous issues in an attempt to resolve them and prevent additional grievances or to prevent current grievances from going further please? I only wish to speak with you. Thanks."

76. On January 16, 2024, Cuffaro responded saying, "Yes. Will do."

77. On January 11, 2024, I submitted an IRF to Cuffaro, stating, "I would like to speak to both Internal Affairs and CID. This would be my 3rd request and the previous ones have been ignored. I have some confidential matters to discuss with them and it is my understanding that this request can't be denied so again since you seem to be the only one who cares and does their job can you please arrange this. Thanks."

78. On January 12, 2024, Dreibelbis intercepted this request and stated, "Your previous two requests were forwarded to Major Lucas. Please remain patient."

79. On January 25, 2024 I submitted an IRF to Cuffaro, stating, "Ms. Jill, this is just a friendly reminder about (1) meeting with me to discuss some issues (2) my discovery issues that you said you would help me with (3) A copy of my closed grievance. Thanks."

80. On February 6, 2024, Cuffaro, responded to my request stating, "I will be out as soon as I can."

81. On February 16, 2024 I met with Cuffaro and informed her that all my legal mail was not being mailed out. Cuffaro informed me that if I had any additional issues in the future with my mail not being mailed out to notify her immediately.

82. On February 16, 2024, I informed Cuffaro that Major Roger Lucas continues to ignore my requests to speak with internal affairs. She asked me if I could briefly inform her what I needed to speak to internal affairs about in which I informed her that I needed to speak with internal affairs about PREA related issues, retaliation and DCP failing to protect me. Ms. Cuffaro informed me that she would contact internal affairs and have them come see me.

83. On February 23, 2024, I met with Cuffaro and Sauble. I informed them of the "race war" that happened on I block and how Morton and Colon instigated it. I also informed them of how I informed Borden of the dangerous situation with me being bullied and extorted, etc. and how he said he was going to have D.S. moved but then for whatever reason it didn't happen. I informed Sauble of the pre-existing relationship that I had with Battaglia, the recent sexual harassment from Hinkle and the fact that he made sexually suggested

comments to me in regards to Battaglia and I's sexual history. I also informed Sauble that I attempted to have a separation order on Battaglia and that Kothe denied it and then threatened me with a misconduct for filing "false PREA's". Sauble informed Cuffaro to email Lucas and to have him immediately place a separation between Hinkle and myself and Battaglia and myself. Sauble also stated that when I requested this separation against Battaglia back in 2022 that it should have been approved.

84. Defendants do not preserve inmate safety as inmates are threatened, attacked, bullied, extorted, harassed, etc. by other inmates. Since it is axiomatic that I lack any standing to assert complaints on the behalf of other inmates for this complaint, my own personal injuries and violations of Constitutional rights will have to suffice.

85. On March 6, 2024, I forwarded to E. Rodriguez a memorandum outlining what was included in a PREA investigation report, what she has already provided me and what she has yet to provide.

86. On March 8, 2024, I sent an IRF to E. Rodrigues asking her to confirm receipt of my memo.

87. On March 10, 2024, E. Rodriguez confirmed receipt of memorandum.

88. On March 14, 2024 at approx. 8:05p.m.; 8:17p.m.; and 8:39p.m., Battaglia violated the current separation order enforced between him and I by doing his "rounds" on the block that I was assigned to.

89. Cuffaro and Sauble were immediately notified via an IRF that Battaglia had violated said separation order on those 3 separate times on March 14, 2024.

90. Sauble contacted the captain's office and informed that Battaglia was not to be on Q block at all due to the separation order between him and I that was put in effect on February 23, 2024.

91. On March 19, 2024, at approx. 6:24p.m., Battaglia violated the current separation order enforced between him and I by being in Q block bubble.

92. Cuffaro and Sauble were immediately notified via an IRF that Battaglia had violated said separation order.

93. On June 13, 2024, at approx. 1:50p.m., Battaglia violated the current separation order enforced between him and I by walking in Mainside Medical were I was currently at, to report to his post and instead of immediately leaving the area entirely and going to central to address the issue, Battaglia chose to wait inside the nurse's office inside Mainside Medical and waited until I left.

94. Cuffaro and Sauble were immediately notified via an IRF that Battaglia had violated said separation order.

95.  On June 14, 2024, I sent an IRF to Cuffaro and Sauble requesting a separation against Corrections Officer, Chrisandra Brandt, due to the personal relationship that she has with Battaglia and to prevent any potential retaliation issues in the future.

96.  On June 19, 2024, I received a copy of the statement made by Lieutenant Skelton sent to Sauble from Internal Affairs on March 22, 2024, informing Sauble that he has closed the PREA investigation on Hinkle and informed him that he found the complaint to be "unsubstantiated" due to not being able to interview Hinkle due to Hinkle's military deployment.

97.  On June 20, 2024, I spoke with Skelton and he informed me that due to the fact that he was unable to interview the other party and the fact that Lt. Parson failed to save any video footage that he had no choice but to find the complaint unsubstantiated due to Hinkle's military deployment that will last for over another year. He also told me that due to Parson failing to following protocol and submit a PREA report when she interviewed Hinkle and I back in November 2023, this PREA complaint was thrown into his lap after DCP became aware of Parson's insubordinate behavior/response to protocol in March 2024.

98.  In regards to this plaintiff's failure to protect claim against defendant Borden, and as per **Farmer v. Brennan, 511 U.S. at 834; Bistrian v. Levi, 696 F. 3d 352, 367 (3rd Cir. 2012)** it should be sufficient for this Honorable court to see that (1) this inmate was incarcerated under conditions posing a substantial risk of serious harm; (2) Borden was deliberately indifferent to that substantial risk to this inmate's health and safety and (3) Borden's deliberate indifference caused this inmate harm.

99.  In **Travillion v. Wetzel, 765 fed. Appx. 785, 795 (3rd Cir. 2019)** citing **Shelton v. Bledsoe, 775 F.3d 554, 564-65 (3rd Cir. 2015)** it states in pertinent part. "the 8th amendment not only protects against harm, but also protects against risk of harm."

100. In **Cambo v. Wolf 2019 U.S. Dist. LEXIS 200431** and **Myer v. Girouz, 2018 U.S. Dist. LEXIS 217014, 2018 WL 6831147, at 7n 4 (W.D. Pa. Dec. 28, 2018)** citing **Heisler v. Kralik, 981 F. Supp. 830, 837 (S.D.N.Y. Oct. 9, 1997)** thus, prison officials have an obligation "to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner. Whether or not an attack actually occurs and if it does occur, whether or not injuries suffered in an attack are serious."

101. Also in **Riley v. Jeffes, 777 F.2d 143, 147 (3rd. Cir. 1985)** it states in pertinent part, "an inmate's right to be protected from constant threats of violence and sexual assault from other inmates does not require that he wait until he is actually assaulted before obtaining relief."

102. In **Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994)** it states in pertinent part, "under the 8th amendment, prison officials have a duty to take

reasonable steps to protect inmates from self-harm, dangerous conditions within the prison and assaults at the hands of other inmates."

103. These defendants acting under the color of state law deprived this plaintiff of Constitutionally protected rights.

104. **DENIAL OF ACCESS TO THE COURTS, DELIBERATE INDIFFERENCE, FAILURE TO TRAIN, FAILURE TO ACT/REMEDY:**

105. In April 2022, DCP officials denied my access to the courts when they refused to deliver mail from Clearfield County Public Defender's Office, dated and post-marked April 25, 2022 and received back at Clearfield County Public Defender's Office on June 10, 2022 after DCP officials refused to deliver said mail to me and returned it with the envelope marked "inmate released" and "unable to forward" due to it being addressed in my legal name, CODY CARR instead of my maiden name CODY CARBAUGH in which DCP will only recognize and use my maiden name, CARBAUGH, because "DCP will use the name you were first here on."

106. DCP officials violated my U.S. Constitutional Amendment rights # 1, 5 and 6 when they refused, to deliver said mail and decided to follow the arbitrary policy of "DCP will use the name you were first here on." In this case, the first time I became an inmate at DCP I was not married and my name was Cody Allen Carbaugh. This was in November, 2013. I then married in October, 2015 and legally changed my name to Cody Allen Carr in which all my legal documents including my current charges, are under the name, Cody Allen Carr.

107. DCP's refusal to recognize my legal name, "Carr" which was legally changed in October, 2015 after being married, not only has denied me Access to the Courts but has also violated my right to legal representation. Whether intentionally or unintentionally, this has discriminated against my sexual orientation and is extremely biased to my "non-traditional", same-sex marriage.

108. This frivolous and arbitrary policy, procedure, regulation or custom, is NOT reasonably related to a legitimate penological interests, nor does it support the safety, security, or operations of the prison. In order for a policy, procedure or regulation to support the safety, security or operations of the prison, NOT having said policy, procedure or regulation has to pose a threat to the safety, security or operations of the prison, in which NOT having this policy does NOT nor would it pose a threat to the safety, security or operations of the prison.

109. A basic corollary to the right of Access to the Courts is the prisoner's right to communicate with an attorney.

110. The right of a prisoner to communicate with their attorney concerning pending or contemplated legal action is recognized by all courts.

111. In **Procunier v. Martinez, 354 F. Supp. 1092** in pertinent part, it states "Procunier enunciated the minimum procedure that must be followed when prison officials censor or withhold mail. The prisoner must be notified of the rejection of his or her letter, the letter's author must be allowed to protest the refusal and the complaint must be decided by an official other than one who made the original decision to refuse delivery."

112. Also in **Procunier v. Martinez,** it states in pertinent part, "the following should, at minimum, be provided for: (1) notice to the inmate that a letter has been disapproved, whether the letter be incoming or outgoing; (2) a reasonable opportunity for the inmate to contest a decision disapproving of an outgoing letter and for an inmate's correspondent to contest a similar decision on an incoming letter; (3) review of complaint arising from censorship by an official of the prison other than the person who initially decided to disapprove a letter."

113. This petitioner was NOT informed by Dauphin County Prison that the piece of legal mail in question was sent to me and subsequently returned to sender. This petitioner did NOT find out that said mail was sent to me and subsequently returned to sender until petitioner had his Preliminary hearing for Clearfield County and his Clearfield County Public Defender informed him of the situation. The Clearfield County Public Defender's Office was unable to forward the mail to me due to not knowing where to send the mail.

114. On January 26, 2023, I sent an IRF to the Law Library requesting a manila envelope to mail out my § 1983 lawsuit.

115. On January 31, 2023, Yingst, hereinafter referred to as "YINGST", responded with the following response: "We do not provide envelopes for civil paperwork. You will have to use envelopes provided in your indigent packet."

116. On October 18, 2023, I sent an IRF to the Law Library requesting "paper to finish my petition to the Court which is access to the Courts."

117. On October 20, 2023, Yingst responded with the following response: "You will need to use your indigent packet for paper and envelopes etc. as you are not pro-se. Your attorney is Eric Delp. Any motions or petitions you try to file will be stamped and fwd. to Atty Delp per Rule 576 (A) (4)."

118. On October 22, 2023, I submitted an IRF to the Law Library requesting "paper for my pro-se motion which is access to the courts."

119. On October 23, 2023, Yingst responded with the following response: "We do not have pro-se paperwork. As long as you have an attorney on record, all motions get forwarded to him/her (Per Rule 576 (A) (4)). Both dockets have Eric Delp as your attorney, you are not pro-se."

120. On November 9, 2023, this petitioner forwarded a Habeas Corpus brief to the Supreme Court of Pennsylvania. This brief was over 40 pages long. Due to my indigent status, the

Business Office placed 1 (one) stamp on this brief and mailed it. Due to such, this brief was returned from the post office for "insufficient postage".

121. DCP officials violated my U.S. Constitutional Amendment rights # 1 and 5 in regards to petitioning the Government for a redress of grievances, Access to the Courts and due process of law.

122. On December 14, 2023 Borden returned said brief to me and explained to me that the USPS was requesting an additional $1.89 in postage. I explained to Borden that I was indigent and that DCP always pays for my legal postage and that they even pay for my personal postage. I also informed him that it was DCP whom placed the initial stamp on the envelope to begin with and that they would need to pay for the rest of it due to my indigent status and it being legal mail. Borden informed me that he would forward the brief to Yingst and inform her what I had told him.

123. On December 15, 2023, Yingst returned the unopened brief to me stating "This was returned for insufficient postage. You need to add an additional $1.89 in postage and then mail it back out." I informed Yingst that DCP has declared me indigent and that DCP has always paid for my legal postage and even pays for my personal postage. I also informed her that because I was indeed declared "indigent" by Dauphin County Prison and that this was a brief to the Supreme Court of Pennsylvania thus considered "legal mail" that DCP was required to pay for the postage and that refusing to pay for the postage was in turn violating my right to Access to the Courts.

124. Yingst informed me that DCP was NOT required to pay for the legal postage that the payment for postage was the responsibility of the inmate. I then asked Yingst if I could get that in writing and she informed me that I could find it in the handbook. I informed her that it in fact was not in the handbook and how was I supposed to get this brief mailed out since I was indigent and couldn't pay for it. Yingst informed that I would have to write a request slip to Welden and talk to him about it on Monday.

125. On December 15, 2023 I submitted an IRF to Welden explaining to him the situation and asking for his assistance with it being mailed out. I never received a response from Welden or anyone else in regards to this issue.

126. It has been the law of the land since 1941 that a state and its officers may not abridge or impair a prisoner's right to apply to a federal court for a Writ of Habeas Corpus.

127. In **Ex Parte Hull, 312 U.S. 546 (1941)**, it states in pertinent part, "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus."

128. Since the decision in **Ex Parte Hull**, federal courts have closely scrutinized any prison regulation that allows the prison administration to refuse to forward prisoner mail.

129. On December 17, 2023, I finalized my legal brief for the Disciplinary Counsel of the Supreme Court of Pennsylvania. I forwarded said brief to Yingst for her to forward to the

Business Office to mail out as per DCP policy. I informed Yingst both in person and via IRF that there was a deadline for said brief to be mailed out and said deadline was the very next day, December 18, 2023.

130. On December 19, 2023, Dreibelbis returned said brief to me stating that I either had to pay for my own postage or request a while legal pro-se manila envelope from the law library in order for DCP to pay for the postage.

131. The lack of coherence by DCP officials caused the failure to meet the deadline of December 18, 2023 that was imposed upon me. The envelope that I used was a DCP approved manila envelope that received from another inmate who had purchased said envelope off the DCP commissary. Nevertheless, the envelope that was used was a DCP issued and approved envelope and therefore should never have been denied to be sent out with their postage.

132. In essence, if DCP officials would have allowed the use of this DCP approved and DCP commissary issued manila envelope, it would have saved DCP money no matter how little. It can be confidently assert that "saving money" is and always will be one objective of any penological institution.

133. I have attempted on numerous occasions to obtain paper from the Law Library in order to prepare my legal briefs. At the time of these requests I was not pro-se thus according to Yingst, Community Connections Coordinator/Law Library Supervisor, Janine Rawls, hereinafter referred to "RAWLS", Cuffaro and Ray I was not afforded the privilege of additional paper or envelopes aside from the 5 sheets of paper and 2 envelopes that I received in my bi-weekly indigent kit.

134. Any inmate or individual even slightly accustomed and familiar with the legal system in regards to petitions and motions can confidently assert that in some or even most cases, a mere 5 sheets of paper would NOT normally be sufficient enough paper to draft a legal brief.

135. On December 27, 2023, I submitted an IRF to Yingst, stating, "Ms. Ann, I am in desperate need of a pro-se legal letter pad for my briefs to the Judicial Conduct Board and the Disciplinary Board of the Supreme Court please. Thanks."

136. On January 2, 2024, Yingst responded to my request stating, "You have been denied this by Admin, therefore I cannot supply above."

137. On December 29, 2023, I filed a grievance (grievance # 1022) for DCP refusing to pay for legal postage. The grievance was marked "non-grievable" and signed by Cuffaro with the following response: "Indigent mail provides envelopes every 2 weeks. Envelopes are only provided for pro-se indigent individuals. Even so, a person must exhaust free indigent envelopes first. You were not pro-se until 1/4/2024."

138. On January 5, 2024, the Honorable President Judge Scott Arthur Evans, granted my request to proceed pro-se.

139. In **Bounds v. Smith, 430 U.S. 817** in pertinent part states, "The court affirmed, holding that the prisoners had a constitutional right of Access to the Courts. States had affirmative obligations to assure all prisoners meaningful access to the courts, including paper and pen, notarial services, stamps, the foregoing of docket fees and lawyers."

140. Also in **Bounds v. Smith, 430 U.S. 817** in pertinent part, it states that "It is indisputable that indigent inmates must be provided at state expense, with paper and pen to draft legal documents, with notarial services to authenticate them and with stamps to mail them."

141. In **Murdock v. Thompson, 2020 U.S. Dist. LEXIS 9499** it states in pertinent part, "The Fiscal policy procedure for indigent inmates to send out legal mail states that every facility is supposed to keep unlimited amounts of indigent inmate stamps on hand for legal mail of indigent inmates whether or not the facility uses the CON system."

142. In **Jenkins v. Lane, 977 F.2d at 268 Jenkins v. Lane, 977 F.2d at** 268 (quoting **Demallory v. Cullen, 855 F.2d 442, 448-49 (7th Cir. 1988)**) it states…" The showing of detriment is waived, however where the inmate alleges "a direct, substantial and continuous, rather than a "minor and indirect" limit on legal materials."

143. On January 31, 2024, I forwarded to Yingst, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on January 31, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

144. On February 05, 2024, I forwarded to Yingst, legal mail addressed to The Disciplinary Counsel of the Supreme Court of Pennsylvania-Elizabeth Rubin. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on February 05, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

145. On February 15, 2024, I forwarded to Yingst, legal mail addressed to Dauphin County Public Defender's Office-Eric Delp, Esq. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on February 15, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

146. On February 15, 2024, I forwarded to Dreibelbis, legal mail addressed to MDJ Court 46-3-01. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business

office on February 15, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

147. On February 15, 2024, I forwarded to Dreibelbis, legal mail addressed to Pennsylvania State Police-Internal Affairs. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on February 15, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

148. On February 21, 2024, I forwarded to Dreibelbis, legal mail addressed to Brandy Hoke, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on February 21, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

149. On February 25, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on February 25, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

150. On February 25, 2024, I forwarded to Yingst, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on February 25, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

151. On February 26, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on February 26, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

152. On February 29, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on February 29, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

153. On March 4, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on March 4, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

154. On March 4, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on March 4, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

155. On March 8, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on March 8, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

156. On March 11, 2024, I forwarded to Yingst, legal mail addressed to PREA Auditor-Greg Winston. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on March 11, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

157. On March 12, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on March 12, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

158. On March 12, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on March 12, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

159. On March 12, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this

piece of mail was forwarded to the business office on March 12, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

160. On March 13, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Public Defender's Office-Eric Delp, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on March 13, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

161. On March 20, 2024, I forwarded to Yingst, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on March 20, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

162. On March 20, 2024, I forwarded to Yingst, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on March 20, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

163. On March 20, 2024, I forwarded to Treatment Specialist, Olivia, hereinafter referred to as "OLIVIA", legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded Olivia an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Olivia confirmed that this piece of mail was forwarded to the business office on March 12, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

164. On March 20, 2024, I forwarded to Olivia, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Olivia an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Olivia confirmed that this piece of mail was forwarded to the business office on March 12, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

165. On March 20, 2024, I forwarded to Olivia, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Olivia an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Olivia confirmed that this piece of mail was forwarded to the business office on March 20, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

166. On March 27, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on March 27, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

167. April 1, 2024, Luis Rodriguez, hereinafter referred to as "LUIS", left his position as a Correctional Officer and filled the position of Grievance Coordinator.

168. On April 1, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County District Attorney's Office-Jennifer W. Gettle, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 1, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

169. On April 1, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Public Defender's Office-Eric Delp, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 1, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

170. On April 8, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 8, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

171. On April 8, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 8, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

172. On April 8, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 8, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

173. On April 8, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 8, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

174. On April 16, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 16, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

175. On April 16, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 16, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

176. On April 18, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County Clerk of Courts-Bridget Whitley, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 18, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

177. On April 18, 2024, I forwarded to Dreibelbis, legal mail addressed to Dauphin County District Attorney's Office-Jennifer W. Gettle, Esq. In addition to this piece of legal mail, I also forwarded to Dreibelbis an IRF asking him to confirm the date that he forwarded this piece of legal mail to the business office to be mailed out. Dreibelbis confirmed that this piece of mail was forwarded to the business office on April 18, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

178. On April 18, 2024, I forwarded to Yingst, legal mail addressed to Dauphin County District Attorney's Office-Jennifer W. Gettle, Esq. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on April 18, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

179. On April 18, 2024, I forwarded to Yingst, legal mail addressed to Dauphin County Public Defender's Office-Eric Delp, Esq. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was

forwarded to the business office on April 18, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

180. On April 18, 2024, I forwarded to Yingst, legal mail addressed to Dauphin County Public Defender's Office-Mary Klatt, Esq. In addition to this piece of legal mail, I also forwarded to Yingst an IRF asking her to confirm the date that she forwarded this piece of legal mail to the business office to be mailed out. Yingst confirmed that this piece of mail was forwarded to the business office on April 18, 2024. According to administration's documentation, this piece of legal mail was NOT mailed out.

181. On March 20, 2024, I submitted an IRF to Director of Treatment and Unit Management, Ms. Jillian Cuffaro, alerting her once again that not all of my legal mail was being mailed out, that I had proof and that I wanted to speak with her about it. Ms. Cuffaro responded with "I'll be out to see you."

182. On April 25, 2024, I met with Director of Treatment and Unit Management, Ms. Jillian Cuffaro and I informed her that not all my legal mail was being mailed out again and that I wanted this issue fixed. Ms. Cuffaro informed me that "I don't have anything to do with legal mail so I am not even going to spin you. I don't know what to tell you."

183. Pursuant to **42 U.S.C.A § 1997 e** when it comes to the exhaustion of administrative remedies, the defendants in this case cannot say that this prisoner has NOT exhausted or has NOT attempted to exhaust his administrative remedies for the following reasons:

184. In **Sapp v. Kimbrell, 623 F.3d 813, 822-23 (9ᵗʰ Cir. 2010)** and in **Nunez v. Duncan, 591 F.3d 1217, 1224 (9ᵗʰ Cir. 2010)** it states in pertinent part that "failure to exhaust may be excused when prisoner demonstrates that grievance process was unavailable to him through no fault of his own."

185. In **Williams v. Paramo, 775 F.3d 1182, 1191 (9ᵗʰ Cir. 2015)** it states in pertinent part "a plaintiff may satisfy his burden by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate or obviously futile."

186. Lastly, in **Nunez, 591 F.3d at 1224-25** it states in pertinent part, "affirmative acts by prison officials that disrupt or prevent the exhaustion of administrative remedies may make administrative remedies effectively unavailable."

187. Also in **Caliz v. City of Los Angeles, 2021 U.S. Dist LEXIS 135164** quoting **Albino, 747 F.3d at 1172** it states "once the defendant has carried its burden, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."

188. On November 10, 2023, I filed a grievance (grievance # 867) on Hinkle sexually harassing me.

189. On November 20,2023, I filed a grievance on DCP officials failing to inform inmates of the PREA Compliance Audit in a timely manner in which foreclosed our right to forward

any comments or concerns to the PREA Auditor. Administration does NOT have record of this grievance.

190. On November 27, 2023, I filed a grievance (grievance #954) for DCP refusing to provide me with a copy of the PREA Investigation Report between Correctional Officer, Robert Battaglia and myself without paying for it as well as retaliation. This grievance was marked "non-grievable" on December 22, 2023 by Deputy Warden, LaTonya Ray with a note stating "Incomplete-no receiving staff/staff response, etc."

191. On December 20, 2023, I filed a grievance on Correctional Officer, R. Hinkle violating National PREA Standards on December 15, 2023. Administration does NOT have this grievance.

192. On December 22, 2023, I filed a grievance on Medical. The first response was not received until April 1, 2024.

193. On December 29, 2023, I filed a grievance (grievance # 1023) on Community Connections Coordinator/Law Librarian Supervisor, Ms. Janine Rawls for her denying my access to the grievance procedure.

194. On March 2, 2024, I filed a grievance on DCP officials continuing to interfere and impede me from filing an effective § 1983 lawsuit. This grievance was returned "closed" by Deputy Warden LaTonya Ray with a note stating that it was similar to grievance #954. It should be noted that grievance #954 was marked "non-grievable" due to not having any receiving staff response.

195. The point that this Plaintiff is attempting to assert is that DCP's grievance procedure/administrative remedies are "ineffective, unobtainable, unduly prolonged, inadequate or obviously futile" **(Williams v. Paramo, 775 F.3d 1182, 1191 (9ᵗʰ Cir. 2015)** as well as that "affirmative acts by prison officials that disrupt or prevent the exhaustion of administrative remedies may make administrative remedies effectively unavailable" **(Nunez, 591 F.3d at 1224-25).**

196. It should be clear by the responses to my grievances by DCP officials, that they do nothing but evade and ignore the whole point that is grieved in each grievance, that they do not provide reasonable solutions and they flagrantly justify and excuse the issues grieved.

197. Not only that but the extensive time periods between each response are "unreasonable", and "unduly prolonged".

198. When DCP officials make the decision to mark grievances "non-grievable" when in fact they are grievable, when they evade and ignore the whole point that is being grieved, when they allow unreasonable time pass between each response, when they use the same or similar response as the previous response instead of actually reading the grievance and providing an informed response, or when they "misplace" or have "no record" of grievances that inmates file, prison officials in all actuality are disrupting or preventing

the exhausting of administrative remedies thus they become "obviously futile", "ineffective", "unobtainable", and "unavailable" at no fault of my own.

199. On March 21, 2024, Ms. Rodriguez forwarded to me a grievance response that she found in relation to Correctional Officer, Robert Battaglia back in 2015 informing me that she found the PREA report that I was requesting.

200. On May 20, 2024, I sent and IRF to Briggs, stating, "I have been attempting to discuss with you the issues I am having with my legal mail not being sent out for months. These slips continue to be intercepted because they don't want you to know that this is going on. I have proof and no one will listen. I am pro-se and this is directly effecting my criminal case. I need to see you ASAP."

201. On June 13, 2024, I received a response back from Briggs stating, "I'll speak to you this week." This was on Thursday which would mean he had to end of business on June 14, 2024 to see me. Briggs failed to come see me.

202. On June 17, 2024, I received a grievance response back from Briggs in regards to my legal mail issue stating, "I will be meeting with you on June 17, 2024 to discuss this with you. You need to provide proof that your mail was not mailed out…"

203. This prisoner had attempted on multiple occasions to reach out to the various aforementioned individuals requesting them to remedy the legal mail issue and to provide them with proof to no avail. If this prisoner received any response from these individuals, it was a full denial of my allegations and a full out refusal to meet with me in order for me to show them the proof that not all my legal mail was being mailed out.

204. These supervisors (i.e. Cuffaro, Ray, E. Rodriguez, Pena, Briggs, etc.), maliciously abused their supervisory positions which in turn violated this inmate's rights and has created irreparable harm.

205. These individuals were in a position to correct these violations, by changing and/or amending regulations, policies and procedures and by bad cause failed to do so.

206. These defendants are personally, ethically, professionally and lawfully responsible for this grievous treatment to this plaintiff.

207. Unfortunately, Yingst has been unfairly put in a position by her superiors in which she must "follow orders' or risk having her position of employment terminated.

208. Unfortunately, Yingst is bound by the directives given to her by her superiors and does not make policies or procedures and is forced to enforce them.

209. In **A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F. 3d 572, 586 (3rd Cir. 2004)** it states in pertinent part that, "a supervisor defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the Constitutional harm; or (2) participated in violating

the plaintiff's rights, directed other to violate them or as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."

210. These defendants acting under the color of state law deprived this plaintiff of Constitutionally protected rights.


## V.    LEGAL CLAIMS

211. These violations of this prisoner's rights have constituted a violation of the Plaintiff's 1st, 5th, 6th, 8th, and 14th Amendments of the United States Constitution.

212. These violations of this prisoner's rights have constituted a violation of the Plaintiff's Article 1 § 1, Article 1 § 13, Article 1 § 20 and Article 1 § 26 Amendments of the Constitution of the Commonwealth of Pennsylvania.

213. In regards to the Dauphin County Prison Board of Inspectors, these violations have also violated 61 Pa.C.S. § 1724 (a).

214. The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declaratory and injunctive relief which the Plaintiff seeks.


## VI.    REQUEST FOR RELEIF

215. WHEREFORE, Plaintiff respectfully prays that this Court enter Judgment granting plaintiff:

216. A declaration that the acts and omissions described herein violated the Plaintiff's rights under the Constitution and the laws of the United States.

217. A Preliminary and Permanent Injunction ordering defendants and various unknown "Admin" employees of Dauphin County Prison to immediately upon receipt from Plaintiff, to mail any and all legal/special mail and provide the correct amount of postage for any and all legal/special mail as per Dauphin County Prison policies and procedures for indigent pro-se inmates as well as per federal laws.

218. Compensatory damages against each defendant, jointly and severally.

219. Punitive damages against defendant, Shawn/Sean Borden, for his negligence, recklessness, deliberate indifference, cruel and unusual punishment etc.

220. Punitive damages against each defendant for the participation whether knowingly or unknowingly, in violating Plaintiff's rights to Access of the Courts.

221. Unless a settlement is agreed upon by all parties and approved by this Court, a Jury Trial on all issues triable by Jury.

222. Plaintiff's costs in this suit.

223. Any additional relief this Court deems just, proper and equitable.

Dated: 6/25/24

Respectfully Submitted,

Cody Allen Carr (Carbaugh)

DCP #082738

Dauphin County Prison

501 Mall Road

Harrisburg, PA 17111

## **VERIFICATION**

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.


Executed in Harrisburg, Pennsylvania on 6/24/2024


Cody Allen Carr (Carbaugh)

<u>Memorandum</u>

6/25/24

To: Prothonotary

From: Cody Allen Carr (Carbaugh) DCP # 082738

RE: 42 U.S.C. Sec. 1983

To whom it may concern:

Enclosed, please find an Informa Pauperis, an AO 398 & AO 399 form for each defendant as well as my civil rights Section 1983 Complaint.

I currently am unable to serve these defendants due to DCP's unwillingness to make copies for each defendant & provide postage & envelopes due to my indigent Status.

If you could please file this 1983 lawsu generate a docket & serve the defendant I would greatly appreciate.

Respectfully Submitted,

Cody Carr DCP# 082738



Pro-Se Indigent

NAME: Cody Carr Carbaugh
D.C.P. # 088738
DAUPHIN COUNTY PRISON
501 MALL ROAD
HARRISBURG, PA 17111-1299

RECEIVED
HARRISBURG, PA

JUL 02 2024
PER _____ SH
DEPUTY CLERK

United States District Court
Middle Dist. of Pennsylvania
Sylvia H. Rambo U.S. Courthouse
1501 North 6th St. Suite 101
Harrisburg, PA 17102

✳ Confidential Legal Correspondence ✳

Prisoner Mailbox Rule 6/25/24